Thank you, Your Honor. May it please the court. My name is Bill Temko, and I am counsel for Appellant Southcentral Foundation. Southcentral Foundation brought this action to vindicate the governance rights that Congress granted to it under Section 325 of Public Law 105-83, the federal law creating a statewide tribal health consortium, the Alaska Native Tribal Health Consortium, or ANTHC. The plain language, the purpose, and the legislative history of Section 325 all indicate that Congress intended to give the tribal entities that formed the consortium and that participate in the consortium, including Southcentral Foundation, governance and management rights in ANTHC. They were all given a seat at the table. ANTHC violated Section 325 and injured Southcentral Foundation when it did two things. One, it delegated the full power of the ANTHC board to a hand-picked executive committee, and two, it erected barriers to the information that SCF could obtain. Essentially... Your Honor, Mr. Temko, as to the first point you made, as I understand it, as a result of your lawsuit, the ANTHC has adopted a bylaw which says that the actions of the executive committee must be ratified by the full board. Does that not make your first claim as to the executive committee moot? No, Your Honor. It's clearly not moot for several reasons. First of all, it's not moot because of the voluntary cessation doctrine. That's a doctrine that establishes that a defendant's voluntary cessation of the challenge practice doesn't deprive a federal court of its power to determine the legality of the practice. Under that doctrine, ANTHC has what the court calls a stringent and heavy burden to present evidence to show that it is, quote, absolutely clear that the offending conduct will not recur. And in this case, ANTHC fails that standard miserably. First of all, ANTHC has continued throughout this lawsuit, including in its cross motion for summary judgment, to argue that the establishment of the executive committee in the way it did was entirely legal. So it's not backtracking from its position that it could continue to do this or that the problem could recur. But haven't they also agreed that under the bylaws, regardless of whether the executive committee is legal or not legal, whatever the executive committee does must be ratified by the full board? Yes, Your Honor. But here's what happened. They set up an executive committee frankly, for one primary purpose, which was secretly to get Mr. Tuber, the CEO and the board chair, a lucrative new employment contract in the dark of night without notice to the board, without the requirement of board approval or ratification. He accomplished that with the executive committee. Once, frankly, the only time they got rid of the executive committee was after the lawsuit was filed. And there's separate cases that say mere cessation of illegal activity in response to pending litigation does not move the case. But more importantly, they've adopted a new bylaw. What do you want? Your declaratory relief action doesn't ask for a permanent injunction. And I don't think we want to be in a position of asking for a permanent injunction or handing down a permanent injunction saying you can't change the bylaws now. So what more can they do to change the bylaws? Well, I think it's still a ripe dispute, a real case of controversy, Your Honor. What they've really done since they changed the bylaw with respect to the executive committee is they simply, it's sort of three-card Monty, they moved the problem to a different committee. So the evidence in the record shows... Moved it to the whole board of directors? No, no. The actions of the executive committee, or am I wrong on that? No, what they've done is they've taken the compensation responsibility from the executive committee once we called them on it and moved it to a different committee, the leadership and planning committee. So the problem still is out there. And frankly, in any event... Ratify the action of the new committee? I think ultimately the board would have to ratify the contract, but the problems persist because they do the compensation process in secret and the CEO controls who gets on various committees. So essentially what they've done in the guise of the leadership and planning committee is to repeat what they did in the dark of night with the executive committee. What would the declaratory... What would the declaratory... Mr. Tamko? I'm sorry, I thought Judge Morgia had a question. I'm sorry, just as a delayed reaction on the video here. So what do you hope the declaratory relief will get you? I am hoping that the court will say the consistence with the governance provisions of section 325, that ANTHC cannot take responsibility from the full board and give it to a subset of the board to make decisions, whether it's called the executive committee or the leadership and planning committee or the in the dark of night committee. Well, all we have before us is the executive committee, do we not? Well, I would at the very least like an order that ensures what I don't have comfort of right now, which is that the offending conduct will not recur because they have the votes, Your Honor. The offending conduct being, and this is what I think Judge Bea is asking, the offending conduct being what? That their executive committee would be recreated again? Yes, because they have the votes to change the bylaws tomorrow. They have the votes. I mean, one of the themes throughout this case is ANTHC's allegation that SCF is trying to somehow control the consortium. And as we said in our papers, we have but one vote out of 15. That's not what we're trying to do. What we're trying to do is vindicate the rights that Congress promised us under section 325. And unless we get an order from the court saying that what they did violated 325 and was illegal, I think there's nothing that will protect us from them changing the bylaws the day after the court rules. Counsel, Judge McKeon? No, go ahead. Go ahead. Counsel, I was going to ask this question. Am I correct that the statutory language here that set up the consortium talks in terms of the members each having a vote? Yes, Your Honor. It says that each of the regional tribal health organizations represented on the board can designate a director and each director gets one vote. And so you'd like us to say that moving those functions, the voting function, to an executive committee was unlawful because it violated the statute? Yes. Interfered with the governance rights, the rights to vote of each of those members? Yes, you're right, Your Honor. The right to participate in the governance and operations of the consortium. And just to be clear what they, I'm sorry, Your Honor, but just to be clear, what they did is they set up an executive committee and specifically provided that the executive committee could meet without, first of all, it had the full authority of the board, but more importantly, it could meet without giving notice to the other 10 directors who were not on the executive committee. And that's exactly what happened as they met in the dark of night and within 24 hours gave Mr. Tuber a new contract that increased his salary from $110,000 to $1,000,000 per year. Okay, thank you. Then how does Magia proceed? I have a question regarding the informational barrier issue. And I guess I just, is there a case that you can point to where an implicit right for information was found, even though the right was not explicitly expressed in the statute? Well, I do think that there's standing... But if you could just answer that question, because I couldn't find a case and all the cases that you seem to point to on behalf of your client are cases where it was expressly stated in the statute. And so I'm trying to figure out how you survive that. Well, Your Honor, I cannot... The district court, when we had the summary judgment motions, the night before the hearing, he sent a series of questions to us. And one of them was, can you tell me, can you find any other statute, federal statute that is similar to this? And I think both sides spent many hours late in the night looking and frankly didn't find one. So I think the short answer is this is sui generis. It is painted on the unique background of the tribal health system in Alaska. I do think that because the statute has explicit provisions regarding governance, I do think that if we... It is analogous to the corporate context. It is analogous to the context of director's access to information, the right of directors to have absolute access to unfettered access to information in order for them to be able to fulfill their fiduciary duties. So too here, our governance rights are illusory. If as ANTHC did here, it imposed all sorts of draconian information barriers that not only prevented our designated director from sharing critical information with SCF and the SCF board, but in many instances even precluded the directors themselves from getting access to the information because the executives at ANTHC deemed it too sensitive. But I do think that the information right is inextricably linked to the governance rights, but I can see Judge Brevia that... And I do think the cases that the district court relied on are clearly distinguishable. The whole governance, it's a concrete right that we have under the statute as compared to, for example, the cases like Wilderness Society. Those are cases and some of the other ones where as the Ninth Circuit has held and the Supreme Court has held that if you have a procedural right in vacuo, if there's no concrete interest affected, I get it. That's not enough for Article III standing. But in this case, this is not some generalized diffuse injury suffered by every member of the public. This is a statute that calls out by name South Central Foundation and 12 other regional tribal health organizations. Nothing could be more particularized. Nothing could be more concrete under the standing rules, it seems to me, than Congress specifying that these 13 tribal health organizations have these explicit governance and participation rights. Counsel Judge Gould, if I could ask a question just on background here. I know that the Alaska Native Claims Settlement Act set up a number of regional corporations and village of them correspond to a particular regional corporation. Not necessarily, Your Honor. The South Central Foundation was formed pursuant to the tribal authority of one of the regional corporations, Cook Inlet Region. And as you read in the statute, SERE delegated its tribal authority to South Central Foundation and South Central Foundation as a tribal organization organized under the Self-Determination Act enters into a compact and funding agreement with the federal government. The other tribal health organizations did not, as far as I know, did not get their delegations directly from the other regional corporations. In other instances, they got their tribal authority from federally recognized tribes in those regions. So, it's a little bit of a mix and match, but the 13 tribal health organizations identified in the statute are not all associated with the 12 ex-regional corporations. Okay. Thank you. I appreciate that. So, Counsel, we took you with my questions to the end of your time. I suppose we should let the appellee argue. And then, although your time is technically up, just 20 seconds, I'll give you two minutes for a puddle of time so you could plan for that. Thank you, Your Honor. Okay. Counsel, Mr. Torgerson, please proceed. I can't hear you. I can't hear you, Mr. Torgerson. Give up my question. I'll try again. Can you hear me now? Is this working better? No. I can hear now, yeah. Okay. Great. Great. Well, good afternoon. I wanted to start by underscoring that this is an important case for the state of Alaska because it involves health care services for Alaskan state. And it raises significant issues related to governance that are novel. But the question, actually, I'm sorry, Judge Bay, are you? Yeah. I can hear you perfectly well. Okay. Great. Thanks. But the issue before the court today is actually much narrower and much less novel. And that is a question of standing. And even more specifically, was the order from which this appeal taken properly decided? And I make that distinction because there are so many issues and so many arguments that the appellants here have raised in the first instance in their appeal. So what I propose to do is talk for a bit about why Judge Burgess's decision was correct and should be affirmed, and then talk about why even if the court considers the new arguments raised in the first instance on appeal, the decision still should be affirmed. Before I begin that, though, I do want to pause and ask if there's any question any of you would like me to start with. Yes. I don't know if this is going to take you off your track, but my question is, you know, on a mootness and why this isn't moot, or why, I mean, what's your best argument to counter SCF's claim that this is, you know, could be changed by ATS's bylaws that could be amended back to how they were prior to 2017? So thank you for that question. It actually, I think, ties into a couple of different issues, both mootness and then also into the requirement for actual and imminent injury as part of the injury and fact analysis understanding. So let me just run through a couple of facts here, because I think it's really important to have these. And that is, of course, starting with the creation of the Executive Committee in the first instance, which was a 13 to 2 vote. This was not the dark of night, a 13 to 2 vote in December of 2014. And that committee has met exactly one time to do substantive work. It also met a second time to approve its minutes from that first time. SCF makes an argument that the contracts were already signed and it was a done deal when that vote of 13 to 2 takes place. What's your response to that? Does that matter? Does that have any effect on us? I think it doesn't matter, first of all, because their claim to injury is that there was something being done by the Executive Committee that the whole board wasn't involved in. The whole board was involved in this, so their record got to vote on it. Now, there may have been other injuries flowing from that, such as damages under their theory, if the contract hadn't been approved, but that's a different question. In addition to which, the record indicates, and I'm referring here to SCR, I think it's 48 through 50, a declaration from one of the other members of the board at the time, who said, we spent a page. I didn't feel pressured to vote a certain way when I voted in support of the contracts. So they can make that accusation, but the fact of the matter is that's not their core complaint. Their core complaint is that the Executive Committee was acting without ratification and consequently without an opportunity for their board, for their designated director to vote. And second, the evidence indicates that there was a majority that supported this and no the one other thing I want to say. It's Judge Gould, if I could interject. Of the 13 members of the consortium, how many of them voted on the the contract implemented by the Executive Committee? The ratification vote was a voice vote, so it's not clear what the vote was. What the record does indicate is that there was at the same meeting just before, it's either just before or just after that vote, there was a voice vote and there was a question about whether it was a clear vote. And so they did a roll call and the roll call was nine to four. So the implication from that is that it was even clearer on the statute that set up this consortium. Why would it be proper to limit one of the participants to a role in ratification rather than the initial vote on the contracts? The idea of boards having committees that take action subject to later ratification is commonplace in the corporate law structure. And the idea that each board member would have one vote is also commonplace in a corporate structure. So plaintiffs are arguing, SCF is arguing, that the fact that it says everybody gets everybody's vote, everybody gets to vote, means that there couldn't be any action that's done without everybody voting, is I think a bit of a stretch, but I just want to emphasize that it's... Shouldn't it matter though that this is in a federal statute and not part of a bylaw? I mean, not part of a corporate structure that sort of guidelines. Well, I think it may, but if I may, I think there may be some confusion about the record because the fact is that there's never been a time when there's been this kind of ratification except about two years before the complaint was filed. And that since that time, including in December of 2015, when Mr. Tuber's compensation was considered again, it was done by the whole board. So I don't want to be fighting against whether there's some difference here too much because the record indicates that there in fact was no actual harm and no imminent risk of the executive committee doing something either without ratification or with ratification because as of more than a year before the time that this complaint was filed, the whole board was on this very issue acting as a whole board. There was a separate meeting in December of 2015 where the board, all the committees got together for a discussion, but the board as a whole didn't vote on anything until they all voted together. So there was again, like I said, I don't want to be pushing back too much on exactly what interpretation here is because on the standing issue, there wasn't an actual or imminent harm at the time that this complaint was filed in January of 2017. And the vote in December of 2015 on this very issue was 11 to one. The only dissenting vote was a vote cast by the representative designated by SDF with three votes abstaining, including Mr. Tuber. So back to the standing issue, that's why, and this goes to the movements issue as well. As of January 2017, there was no actual case in controversy about whether the executive committee would be acting either without ratification or even taking substantive action because it wasn't until January of 2017 that the ANTHC changed its bylaws to make that explicit. I'm sorry, I don't see Judge Gould anymore. So we may be having some technical difficulties here. It looks like we may have disconnected. I can try to call him and get him back as soon as possible. I apologize. I just noticed that he just dropped from the screen. I just heard from Judge Gould's assistant. He is trying to come back now as we speak. Hello, can you hear me? Yes, we're back. Sorry, I was frozen and then disconnected. So Mr. Jorgensen should probably proceed and just if you could repeat where you were before I got frozen out. Thank you, Your Honor, I will. I was responding to the question about as well as to the injury in fact related to the executive committee claim and the specific question that Judge Murugia had asked me about was the voluntary cessation doctrine and just focusing on that for a moment. The strongest evidence here that in addition to the action the board has taken on this point, which even SCF concedes is sufficient, is the fact that the board had stopped using the executive committee in the way that SCF is complaining about. Like I said, a couple of years, at least 21 months prior to the time that the complaint was filed, the only time that it had a meeting that was as described was more than two years before the complaint had filed and this action regarding executive compensation and executive review had been the last time it had been. I'm sorry, it had been a year before. But Mr. Jorgensen, I guess I'm trying to figure out why you're saying that there was no case for controversy as of January 2017 when the lawsuit was filed since the bylaws had not been amended by them to require ratification. It was after January 2017 or am I wrong on that? No, you're correct about that. Go ahead. I'm sorry, I didn't mean to interrupt you. So I'm just trying to figure out why are you saying there's no case or controversy and how does that help you with the cessation doctrine because it seems like our case law is pretty clear that unless you're a legislative body, you don't get the benefit of good faith. And if you're a private entity, it's a pretty high burden to meet the cessation, the burden on you for mootness here. So I want to make sure and give you every opportunity to convince me and persuade me why you think it is moot. So thank you. And the point that I would make is that although the bylaws weren't changed until about three months after the complaint was filed, the practice that SCF was complaining about had happened one time, two years prior to the complaint being filed. There'd been a ratification and then when the board had addressed those issues going forward and more than a year before the complaint was filed, it had in fact, its practice, its actions were consistent with what SCF is asking for. So that's why I would say- But today or tomorrow, ANTH could amend it back to how it was prior to 2017. Is there anything stopping it? There are a lot of reasons why it wouldn't do that, including that that's not- But the question is, could they do it? I believe that they could, yes. Yeah. Which is part of the reason why I also stress the standing issue here and why I also come back to the notion that the key question here is one of standing. SCF has raised a number of governance issues and asked the court to engage around a number of governance issues. But the question really is, does SCF have standing? And does SCF as a corporate entity, not its designated director, but does SCF as a corporate entity have standing? And when Judge Burgess looked at this issue and concluded that it didn't, he focused on informational injury, not because he didn't understand that SCF also had an executive committee claim, but because SCF didn't argue it. And he and his footnote 93 even noted that, parties have under the Davis case from the Supreme Court, an obligation to provide a basis for standing for every single one of their claims and that SCF had not done that as to the executive committee claim. And that even if he were to find informational injury, he wasn't sure that that would be sufficient to provide them standing under the SCF claim. So first of all, under his ruling, we believe that they waived their argument related to his question about, well, what's the authority for that? I'm not aware of any statute or any cases that provide the kind of freestanding right to information that Judge Burgess referred to. And what about Mr. Temko's argument though, that this seems rather, this is a very unique, discrete statute, just solely directed to the Alaskan health issues for all of the Alaskan tribes. So is there something that's sui generis here that we should account for? Because I know Wilderness Society is one of the cases that was being discussed, but that seems to involve rights to participate in public comment process. Whereas here, SCF is talking about the rights to govern and participate in the governance of this consortium, I mean, of these health decisions for their constituents. And so I'm trying to figure out, what do we look at to try to answer this question on the informational injury? Because it does seem that access to information is very closely linked to their ability to SCF has made on this point is that one should look to corporate law and that directors need a lot of information to govern, et cetera. I certainly agree with that. That's not what we're talking about here. What we're talking about here and what SCF is trying to persuade the court here is that not only are the directors entitled to a lot of information, they are the entities that have, in this case, been entitled to be represented by them because SCF doesn't have a right to pick them. That's under the bylaws. They just are entitled to have a representative, but that SCF, because it is entitled to have a representative, is entitled to the same vast sweep of information that the board member gets. That's not consistent with corporate law. There are representative board members. There are designated board members. There are constituent board members, many different kinds of board members, board members that are given a position on the board because of their significant interest or shareholders who have a position on the board because of a significant interest, but in none of those situations are the duty of loyalty and the attendant duty of confidentiality swept aside so that all of the information that goes to the director also goes to whoever that designated entity might be. Assuming that's correct, that all the information that goes to the board need not be given to each member of the consortium before they vote, doesn't each member with a vote have a right to a reasonable amount or reasonable degree of information to inform their votes? The board members do. The board members absolutely do, and ANTHC provides, I mean, that's not the issue here. There isn't a question here about board members saying, we're not getting enough information. This is a situation where SCF is saying, we get all the information that the board member gets, and that's inconsistent with a board that is made up of individuals who have a common statewide mission and a common duty of loyalty because it brings the entities into the boardroom. ANTHC has recognized the importance of this representation role, and in their code of conduct, they have a duty of representation for all board members. Board members have to take information to the entity. They have to bring questions and loyalty to the organization. I see I've gone past my time, so I apologize for that. It's okay. We delayed you with the technical difficulty, so if you want to take another two minutes, you can. Then we'll hear from the appellant again. Thank you. I'll just wrap up then by talking a little bit about Section 325 and what it says about the governance issue. First of all, please be careful about the difference between ANMC and ANTHC. SCF has encouraged the notion that they're basically the same thing or that Congress was talking about ANTHC when it was referring to ANMC. They're not. ANMC is the medical facility which SCF and ANTHC jointly govern. SCF has four members on the joint operating board. ANTHC has five members on the joint operating board. That's a whole different thing where there's a whole different management structure, but as to ANTHC, Congress talked about the regional health entities having a right to form ANTHC, to participate in ANTHC and its mission. When it came to Section B, which is the only section that talks about governance, it used for the one time only the word governance, and it talked about persons being on a board of directors. Congress should be known, should be assumed to know what it means when it uses the term board of directors with all the duties of loyalty and the duties of care that go along with that. Judge Bayer, do you have a question? Your box is lighting up. Okay. When 325 uses the term persons to identify who those directors are when it talks about a backdrop of a history of competition between the 200-plus entities in Alaska providing tribal health care services, the issue really here is, is that statewide mission going to be focused on and accomplished by one organization or is it going to be fought over by the 200-plus entities who all have their own local missions or are all striving for resources? We'd ask, again, that you go back to the standing question and conclude that Judge Kirk has got it right. Thank you very much. Okay. Thank you, counsel. Okay. Appellants, counsel, can now proceed. Do I really have two minutes? Just so I can... Well, take three minutes. Thank you. A couple of things. Just at the very end to address my French statement about directors versus the entities. It's clear from the legislative history, as you see in our brief and in the record, that Congress indisputably wanted these tribal health entities in the boardroom. It wanted the governance to be based on the expertise of the tribal health entities who have been providing health services around the state of Alaska for decades. It was not that they wanted one individual stuck in the boardroom and unable to, A, get information and, B, consult with his or her designating entity in order to get the benefit of that expertise. How do you get around the textual argument, Mr. Tenko, that was made by Mr. Torgerson, that the statute talks states person, doesn't state entities? I mean, for those of us who might not put much weight on legislative history, is legislative history the only basis that you're using? No, your honor. I mean, entities are persons under the law as well. Corporations are persons under the law as well. There's no indication that Congress intended the corporate structure, the corporate governance structure of ANTHC to be based on 12 individuals who are in a bubble and precluded from consulting with the entities that consulted with them, that designated them. And frankly, just on one other point that my friend raised, he says that it's not a question of the board members getting information. It's only a question of the entities getting information. The record will show that the SCF designated director, we're now, what, five plus years since the executive committee action in 2014. I believe it is in the record to the effect that the SCF designated director for SCF has still not seen the offending contract that was entered into in the dark of night with Mr. Tuber because it's been stamped as confidential and they have basically told her that if she gets it and shows it to the SCF board that it will somehow be a person to make that argument regarding the board and the entity. So what is the situation here? I mean, is it your argument, Mr. Temko, that the entity in addition to the board member needs to get the information? I think I might be confused right now in light of the argument. It is our position that the designated directors should be given access to information about the operations, the business and operations of the consortium and that consistent with section 325, the designated director who is representing the tribal health authority on the board has to have the ability to consult with his or her designating entity to determine what in the views, in the judgment of that designating entity is in the best interest of the consortium. And there's a lot of red herrings that are thrown about this whole idea of competitiveness and everything else. SCF has recognized and acknowledged throughout the litigation that if there's a bona fide conflict of interest, if in the rare instance where there's a South Central Foundation and the consortium, that obviously that information would not be shared with SCF. But we believe that it is impossible for the tribal health entities to bring to bear their knowledge and expertise for the benefit of the consortium and for the benefit of the thousands of Alaska Natives and American Indians whose health services they're providing if they are kept in the dark and not allowed to know any information about the consortium because Mr. Tuber or other executives stamp the document as confidential. One last question next time I ask, is it your position that the SCF is representing the director who has a right for the information? Because if that's your position, why isn't the director a party to this case? Is this a third party standing case? No, we are not. No, no, no. We have asserted and continue to assert that SCF is the proper plaintiff here and has standing to vindicate its own rights, its governance rights and its related informational rights. But SCF is not a member of the board of directors, is a director that's appointed by SCF. Should the director be made a party plaintiff in this case? Well, we did say to the district court below that we firmly believe that SCF has standing to assert these claims. But if the court were to find that SCF lacks standing, that we were prepared to amend the complaint to add the designated directors as plaintiffs. It's undisputed that the designated directors would have standing. I think the district court acknowledged that. I think ANTHC concedes that. What happened here is the district court dismissed our case on the pleadings on standing grounds without leave to amend, which we think was improper. So if the court, and again, I reiterate, we believe that we have standing. I think a lot of the discussion we've gotten into in the last 10 minutes has conflated merits and standing. And I think the district court fell into that same trap. I think a lot of what we're talking about in terms of the governance issues are really more a merits question than the question of whether SCF has asserted an injury sufficient to satisfy Article 3. And we submit indisputably that we have. I think the Aikens case, the Supreme Court, it's interesting how they approached it. What they said was, at the pleading stage, if we have to assume that SCF's allegations, SCF's view of the law is correct, assuming that SCF is right, that- Counsel, Judge Gould, if I could- Sorry. I want you to be able to conclude your answer to Judge Baye's question, but we're already four minutes past the three-minute extension that I gave. So we need to bring this to a conclusion. Well, as I say, I'll close by saying we believe that we have asserted standing that the district court was in error in failing to find standing for SCF to assert both claims, the claim as the executive committee and the claim as to the informational barriers. If this panel disagrees, and if the panel thinks that SCF does not have standing, then as we suggested to the court below, we do think that the court should vacate the district court's order and remand with instructions to permit SCF to amend its complaint to add the designated directors. Thank you, Counsel. Unless Judge Baye or Judge Marghia have a further question, I think we've got it. No questions from the panel. So this is a very important and challenging case, and I'm going to thank Counsel for Appellant and Counsel for Appellee for your excellent arguments. This case will now be submitted. And again, thank you. Thanks for the special efforts needed to argue remotely. Stay healthy and thanks. Bye. Thank you.
judges: Gould, Bea, Murguia